# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:21-CR-10 |
| v. ) | |
| ) | JUDGES MCDONOUGH/LEE |
| ANDREW CALHOUN, a.k.a. ) | |
| ANDREW CALHOUN-XAYADETH ) | |

## RESPONSE TO DEFENDANT'S TRANSFER MOTION

The United States of America hereby responds to the defendant's motion to transfer his case to California. The defendant is charged in this district with distributing child pornography from California. In support of his motion to transfer, he makes three claims. First, he claims that a trial in Tennessee would not be a trial by "his peers" and, therefore, under FRCP 21(a), transfer is mandatory. Second, he argues, under FRCP 21(b), that a trial in Tennessee would be inconvenient because his witnesses are in California. Third, the defendant argues that his current attorney cannot provide effective assistance of counsel as required by due process because the defendant lives in California, and she lives in Tennessee. The government disagrees. Additionally, the defendant's claims primarily concern preparation for and conducting a trial. The plea date is set for October 4, 2021. Until that day passes, or an extended plea date passes, and the defendant has declined the opportunity to plead guilty, the defendant's motion is premature and should be denied or, at least, held in abeyance.

## BACKGROUND

The government believes the evidence will show the defendant was an active participant in an online room dedicated to exchanging images and videos of child pornography. The room, the Pleasure Dome, operated on a platform known as Kik. The evidence will show that the defendant, while operating within the Pleasure Dome, distributed images and videos of child pornography to an

undercover FBI agent while the defendant was using the names Peanut's Daddy and North925. The evidence will show the FBI originally detected the defendant during an undercover online operation conducted in Chattanooga, Tennessee. The evidence will show that the images the defendant distributed, traveled from California to the undercover FBI agent in Tennessee. When law enforcement officials served a search warrant on the defendant, he admitted to distributing child pornography to people in the Pleasure Dome room and that he used the display name of Peanut's Daddy and North 925. The defendant admitted that he operated as a moderator in the Pleasure Dome and that he saw images of male children as young as 2 years old while they were being anally raped by adult men. The defendant admitted to transporting at least 3 videos of child pornography to get into the room. The images the defendant sent included images of infants being anally raped by adult males. If the case were to go to trial, the government anticipates calling two to three witnesses: the undercover agent who received the images from the defendant and who works and lives in Tennessee, the FBI agent who elicited the defendant's confession, who works and lives in California and (most likely), an FBI computer forensic expert who works and lives in Knoxville, Tennessee. The defendant does not specify who he intends to call at trial nor does he specify, even in general terms, the kinds of witnesses he intends to call.

LAW

Federal Rule of Criminal Procedure 21(a) *requires* the Court to transfer the case if the defendant can show that "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." FRCP 21(b) *permits* transfer "for the convenience of the *parties*, any victim, and the witnesses, and in the interest of justice." (emphasis added.) The first section applies whether there is concurrent venue in another district or not; the second section applies if there is venue in both districts because the offense was committed

in more than one district. Distribution of child pornography, as alleged in this case, is a continuing offense because it began in one district, California, and was completed in another district, Tennessee. Accordingly, pursuant to 18 U.S.C. § 3237, the prosecution of this case would be appropriate in California or Tennessee. The defendant appears to concede that venue is proper in both California and Tennessee. Doc. 24, Defendant's Motion to Transfer, Paragraph #2, PageID#52-53.

ARGUMENT

1. A Jury of One's Peers

The defendant claims transfer is mandatory so that he may be tried by a jury of his "peers." A jury of one's peers is not what the defendant suggests—a nurse practitioner is not entitled to a jury of nurse practitioners any more than a Californian is entitled to a jury of Californians, or Timothy McVeigh, a New Yorker who committed a crime in Oklahoma, was entitled to a jury trial in New York. The Constitution neither explicitly nor implicitly requires a jury of one's peers; instead, the term is often used as shorthand for the right to jury trial in the first place or as a reference to fairness in jury selection or in the juror's right to be permitted to serve on a jury, none of which is trivial.[1] *See Apprendi v. New Jersey,* 530 U.S. 466, 547-48 (2000) (O'Connor, dissenting) (using "jury of one's peers" to describe the right to a jury trial in general); *Batson v. Kentucky,* 476 U.S. 79, 85 (1986) (defendant is not entitled to a jury of his own demographics, but is entitled to a jury whose members are selected by a non-discriminatory criteria).

---

[1] For a history of the term "jury of one's peers," see McKeena, Bruce, *A Jury of One's Peers,* The Federal Lawyer, August 2010, last accessed September 26, 2021, https://www.fedbar.org/wp-content/uploads/2010/08/sidebar-aug10-pdf-1.pdf

As applied in this case, the defendant essentially appears to be seeking a more favorable forum. He seems to suggest that because of "marked differences in community standards" between California and Tennessee, he might find a jury more favorable to himself. Yet, a defendant has no right to search for a forum he believes will be more favorable. *See United States v. Jamal,* 246 F. App'x 351, 368-69 (6th Cir. 2007) (denying a defendant's request to transfer his case to community with more Somali immigrants because a "defendant [has no] right to shop for forum in which his criminal case may be heard.") The "right" to a jury of one's peers is not a meaningful argument in this case. Other than the somewhat vague request to be tried by a jury of his peers, the defendant cannot show how a trial in Tennessee would cause "so great a prejudice" that he would not obtain a fair and impartial trial. Thus, transfer is not mandatory under FRCP21(a), and his motion should be denied on this ground.

   2. Convenience

A transfer of the trial in the case would not be convenient to the government. As the Sixth Circuit has recognized, the "rules require that a transfer for convenience satisfy the convenience of *both* parties. *Jamal,* at 369. (emphasis in original,) In *Platt v Minn. Min. & Mfg.*, 376 U.S. 240, 243-44 (1964), the Supreme Court listed factors to consider in determining whether to transfer a case for the convenience of the parties. These factors were "(1) location of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer." None of these factors is particularly compelling in favor of transfer. The defendant's attorney, the government's attorney, the primary case agent, and the government's

potential expert witness, reside in Tennessee. As for the defendant's allusion to his own witnesses, he lists none, and the undersigned cannot envision who those witnesses might be or to what they might testify. The government does not object to the defendant supplementing his motion with the names, locations, and substance of his anticipated witnesses in a sealed filing. The government notes that if that list includes his parents, unless they are substantive witnesses, their testimony would be limited in the guilt phase of any trial—the defendant is a 45-year-old adult. In short, there are no compelling reasons to transfer the case to California for convenience.

3. Due Process

The only due process claim the defendant alleges is a potential ineffective assistance of counsel claim. To prevail, the defendant must show that his counsel's performance will fall below an objective standard of reasonableness and this deficiency will be prejudicial to his defense. *Strickland v. Washington,* 466 U.S. 668 (1984). The case is currently in the plea negotiation stages. To challenge an attorney's conduct during plea negotiations, a petitioner must show, and here, since the defendant's claims are prospective, he must predict, that she will fail to learn the facts of the case and fail to make a good faith estimate of a likely sentence and that any potential decision to plead guilty will be premised on these errors. *Short v. United States,* 471 F.3d 686, 692 (6th Cir. 2006). According to the defendant's motion, it is "necessary for him to have counsel in the same city as him" to meet this standard. *See* Doc. 24, Defendant's Transfer Motion, PageID# 53. The government is dubious and suspects that the defendant dislikes the position in which he finds himself. At any hearing on this issue, the defendant should be required to show which kind of facts he believes his attorney cannot find because of where she lives. The government does not object to being excluded from any portion of the hearing that the defendant believes will reveal case strategy.

Notwithstanding the actual posture of the case (plea negotiations), the defendant's claims are premised on potential trial preparation problems.[2] At this point, these concerns are premature. If the defendant truly intends to proceed to a trial, he should formally reject the government's plea offers and announce he intends to proceed to trial. Once he does this, he should present a list and description of his witnesses to the Court (ex parte) so the Court can truly weigh the inconvenience a Tennessee trial poses to his witnesses.

4. Public Policy

The decision whether to transfer the case for convenience is truly within the wide discretion of the Court. But there are meaningful public policy reasons to deny the defendant's motion. First, distributing child pornography into an online room where anyone in the world can access those images, is an offense that transcends state and national boundaries. Once the images are placed into circulation, they are irretrievable and those who distribute them should expect to answer for what they have done in any due jurisdiction in the world. In this defendant's statement, he indicated that he communicated with another Kik user named Juan who gave him access to over 50 gigabytes of child pornography. Juan, the defendant stated, lived in Michigan. The defendant also admitted to speaking to a 17-year-old who would send him sexually explicit images of himself and this person lived in Florida. (The defendant should be aware that any potential crimes attendant to this conduct gives venue to California and Florida, but not Tennessee.) The defendant clearly knew that his conduct reached well beyond California. A person who sends images of infant rape throughout the world should not be permitted to limit their accountability to the courts in their hometowns. Second,

---

[2] The government notes that it has offered an FRCP 11(c)(1)(C) plea agreement which must be entered here in the Eastern District of Tennessee. Moreover, the government *consents* to transfer the case if the defendant chooses to plead guilty as charged with a subsequent sentencing hearing in California. The government does not agree to a FRCP 11(c)(1)(C) plea agreement in another district.

under the specific facts of these kinds of cases, the detection, identification, and apprehension of suspects engaged in sharing child pornography in online rooms is uniquely amenable to undercover operations. Because these offenses transcend geographic boundaries, it is highly unlikely that an undercover operation will take place in the same town as an offender. Consequently, most of these kinds of case involve defendants who are located throughout the United States. In the absence of a meaningful reason to transfer a case, these cases should be charged and tried where the undercover operation occurred, not in the potentially numerous locations of the offenders.

CONCLUSION

The defendant is not entitled to a jury of Californians, and even if there was such a right, he cannot not show how a California jury would be more receptive to distributing images of infant rape than a Tennessee jury. Moving the trial is not convenient to the government or all the witnesses—but this analysis is only pertinent if the defendant truly intends to go to trial. The defendant cannot show how a potential plea to the charge would be induced by ineffective assistance of counsel. If the defendant's claim is truly based on his inability to prepare for trial, he should announce that he does not intend to plead guilty and he should present an ex parte summary of witnesses so the Court can decide whether trial preparation is earnestly impaired. Finally, there are no public policy reasons to transfer the case to California. The defendant's motion should be denied.

Respectfully submitted,

FRANCIS M. HAMILTON III
ACTING UNITED STATES ATTORNEY

*s/James T. Brooks*
JAMES T. BROOKS, BPR #021822
Assistant United States Attorney
1110 Market Street, Suite 515
Chattanooga, Tennessee 37402
(423) 385-1311
james.brooks@usdoj.gov